IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CAROL MCGREW, PHYLLIS ANN GOOD,
THOMAS DAY, TERRI LYN DAY,
COLLEEN JAEGER, WILLIAM JAEGER,
REBECCA KASPERS, JACKIE PARKS,
STEVEN PARKS, STEPHEN PEPKE, TARA
PEPKE, DONNA ZARETZSKA, ANGELA
MONEYMAKER and DONALD
MONEYMAKER,

   Plaintiffs,

 vs.         Case No. 14-cv-430-SMY-PMF

HOWMEDICA OSTEONICS CORP.,

   Defendant.

**MEMORANDUM AND ORDER**

 This matter comes before the Court on defendant Howmedica Osteonics Corp.'s

("Howmedica Osteonics") Motion to Sever Plaintiffs and Transfer Venue (Doc. 13).  Plaintiffs

filed a response (Doc. 22) to which Defendant replied (Doc. 23).  For the following reasons, the

Court grants the motion.

 CerviCore, the device at issue, is Howmedica's experimental cervical spine prosthetic

device.  It is implanted between two cervical vertebrae and was developed as an alternative to

anterior discectomy and fusion procedures.[1]  Howmedica portrayed CerviCore as advantageous

over anterior discectomy and fusion procedures.  In order to obtain FDA approval, Howmedica

recruited 400 individuals to participate in a human study.  The participants were not told if they

would receive a CerviCore unit or a fusion surgery.  Each of the 9 CerviCore Plaintiffs in the

---

[1] "Anterior cervical discectomy and fusion (ACDF) is a surgery to remove a herniated or degenerative disc in the neck area of the spine.  The incision is made in the front of the spine through the throat area.  After the disc is removed, a bone graft is inserted to fuse together the bones above and below the disc space."  *See* Mayfield Clinic, http://www.mayfieldclinic.com/PE-ACDF.htm#.VK_hItLF9WU.

instant case is part of the group of 200 participants that received the CerviCore unit and allegedly suffered damages as a result. The five remaining plaintiffs are spouses of the CerviCore Plaintiffs.

Defendant filed the instant motion arguing that Plaintiffs' claims are misjoined and must be severed. Specifically, Defendant notes that the nine CerviCore plaintiffs reside in eight different states,[2] that their devices were implanted in hospitals in eight different states by eight different surgeons and that the implantations occurred at different times between 2006 and 2008. Further, they note that some CerviCore Plaintiffs allege injuries occurring immediately after implantation while others do not allege injuries until years later. The alleged injuries are also not common among the CerviCore Plaintiffs and include such varied injuries as metallosis, device shifting, nerve damage, and psoriatic arthritis. Finally, the CerviCore Plaintiffs' medical histories and post-implantation treatment vary widely.

Plaintiffs argue that they are not misjoined because "at the core of all their injuries are a common set of facts: the manner in which Howmedica designed the CerviCore, manufactured it, concealed information about it, and conducted the human trials" (Doc. 22, p. 2). Plaintiffs argue that factual questions including how Howmedica conducted its study and whether Howmedica deviated from the proper protocol and caused injuries will present common factual and legal questions justifying joinder. Plaintiffs suggest that the Court defer consideration of severance until after Plaintiffs gather and process discovery. However, Plaintiffs cite to no support for this position.

The Rules strongly encourage joinder and specifically provide as follows:

---

[2] Carol McGrew resides in Edwardsville, Illinois. Phyllis Ann Good resides in Southfield, Michigan. Thomas Day and Terri Lyn Day reside in Creede, Colorado. Colleen Jager and William Jaeger reside in Mill Valley, California. Rebecca Kaspers resides in Issaguah, Washington. Jackie Parks and Steven Parks reside in Clearwater, Florida. Stephen Pepke and Tara Pepke reside in Wyandotte, Michigan. Donna Zaretzka resides in Hartsville, South Carolina. Angela Moneymaker and Donald Moneymaker reside in Raphine, Virginia.

> [p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief
> jointly, severally, or in the alternative with respect to or arising out of the same
> transaction, occurrence, or series of transactions or occurrences; and (B) any
> question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a); *see United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966).

For Plaintiffs' cases to be properly joined, they must satisfy both of the foregoing Rule 20

requirements. *Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000). District

courts should afford the foregoing requirements a liberal construction to effectuate Rule 20's

purpose of promoting trial convenience and expediting the final determination of disputes.

*Bailey*, 196 F.R.D. at 515. Where parties are misjoined, the Court may sever the case pursuant to

Rule 21.[3] Ultimately, the district court has broad discretion in determining whether joinder or

severance is appropriate. *See Thompson v. Boggs*, 33 F.3d 847, 858 (7th Cir. 1994).

 In determining whether a certain factual scenario satisfies the first Rule 20(a)

requirement, courts take a case-by-case approach because "[n]o hard and fast rules have been

established." *Id.* (citing *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)).

"[C]ourts are inclined to find that claims arise out of the same transaction or occurrence when the

likelihood of overlapping proof and duplication in testimony indicates that separate trials would

result in delay, inconvenience, and added expense to the parties and to the court." *See* 7 C.

Wright *et al.*, *Fed. Prac. and Proc.* § 1653 (3d ed.).

 In the medical products liability context, "medical and legal causation present formidable

obstacles under Rule 20." *Insolia v. Philip Morris, Inc.*, 186 F.R.D. 547, 549 (W.D. Wis. 1999).

For instance, in an asbestos case a district court found joinder of 100 plaintiffs inappropriate

concluding that the confusion resulting from over 100 claims based on unique facts would

outweigh any benefit of judicial economy. *In the Matter of Asbestos II Consolidated Pretrial*,

---

[3] Federal Rule of Civil Procedure 21 provides that "the court may at any time, on just terms, add or drop a
[misjoined] party. The court may also sever any claim against a party."

No. 86-C-1739, 1989 WL 56181, at *1 (N.D. Ill. May 10, 1989).  Other district courts have reached similar conclusions.  One example is a case in which smokers' claims against tobacco companies included an industry-wide conspiracy to deceive smokers regarding smoking's health effects.  *Insolia*, 186 F.R.D. at 550.  The court concluded the parties were misjoined after considering that smoking propaganda reached the smokers through varied channels and medical causation determinations would require highly individualized inquiries into each smoker's case.  *Id*.  For instance, one smoker's cancer was potentially attributable to a work-related absence, and one smoker may not have even had cancer.  *Id*.  Similarly, another court considering Rezulin claims concluded the plaintiffs were misjoined noting that "the joinder of plaintiffs who have no connection to each other except the fact that they ingested Rezulin constitutes misjoinder."  *In re Rezulin Prods. Liab. Litig. (MDL No. 1348)*, 00 Civ. 2843 (LAK), 2002 WL 31496228, at *1 (S.D.N.Y. Nov. 7, 2002).  The court further found it relevant that that the plaintiffs did not "allege that they received Rezulin from the same sources, that they were exposed for similar periods of time, or that they suffered similar injuries."  *Id*.

With these principles in mind, the Court concludes that Plaintiffs' claims do not arise from the same transaction or series of transactions as they must in order to satisfy Rule 20's permissive joinder requirements.  Plaintiffs have not alleged that they were implanted with the device by the same physician or even in the same hospital.  Similarly, their resulting injuries and treatments for those injuries are varied.  In fact, similar to the *In re Rezulin* plaintiffs, the only connection the CerviCore Plaintiffs have to one another is the fact that they were all implanted with the same device.  If the Court were to find joinder appropriate based on that lone fact, then nothing would limit the joinder of products liability plaintiffs in one case.

Further, allowing joinder in this case would not serve the policies underlying Rule 20. Considering the varied medical histories and resulting injuries and treatments, the legal and medical causation inquiries will be individualized to each CerviCore Plaintiff.  Presenting these varied facts for each plaintiff will cause confusion and outweigh any benefit received from the judicial economy of solving a few common questions referred to by Plaintiffs.

As such, the Court finds severance of Plaintiffs' cases appropriate.  The Court severs the cases into the following actions against Defendant: (1) Carol McGrew; (2) Phyllis Ann Good; (3) Thomas Day and Terri Lyn Day; (4) Colleen Jaeger and William Jaeger; (5) Rebecca Kaspers; (6) Jackie Parks and Steven Parks;  (7)  Stephen Pepke and Tara Pepke; (8) Donna Zaretzska; and (9) Angela Moneymaker and Donald Moneymaker.

Defendant next contends that the Court should transfer the severed cases, with the exception of Carol McGrew's case, to other jurisdictions pursuant to 28 U.S.C. § 1404(a). Defendant's arguments for transfer include the following: (1) the eight Plaintiffs' choices of forum should not be given deference because this district lacks any connection to their claims, (2) the districts in which implantation occurred offer access to sources of proof, (3) the proposed transferee districts provide convenience to witnesses, (4) citizens and courts in this district should not be burdened with deciding cases that have no connection to this district, and (5) absent severance this Court would be required to apply the substantive law of eight different states.   In response, Plaintiffs argue transfer is not appropriate for the following reasons: (1) Defendant's witnesses are Defendant's former employees likely located in New Jersey and Michigan and the transferee districts would be inconvenient, (2) treating physicians' testimony can be presented by deposition to avoid witness inconvenience in this District, (3) the location of

many experts is still unknown, and (4) the fact that one forum is just as convenient as another forum does not warrant a transfer under § 1404(a).

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . ." 28 U.S.C. 1404(a).  The decision to transfer a case is left to the discretion of the district court.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986).

In deciding a § 1404(a) motion to transfer, the Court should consider a number of case-specific factors such as the convenience of the potential transferee forum to the parties and witnesses, the fairness of the transfer in light of any forum selection clause, the parties' relative bargaining power, and the interest of justice in general.  *Stewart*, 487 U.S. at 29-30; *see Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).   "The Court may also consider the location of the relevant events and the access to evidence provided by each potential forum." *Allied Servs. Div. Welfare Fund v. Novartis Pharma. Corp.*, 12-cv-775-MJR, 2012 U.S. Dist. LEXIS 188278, at *1 (S.D. Ill. Nov. 28, 2012).  "The movant . . . has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient," *Coffey*, 796 F.2d at 219-20, and the Court must give some weight in favor of the forum in which the plaintiff chose to file the complaint.  *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989)*; Macedo v. Boeing Co.*, 693 F.2d 683, 688 (7th Cir. 1982).

After considering these factors, the Court finds that transfers are appropriate.  As an initial matter, Plaintiffs' choice of forum in this district is given little deference because their causes of action are wholly unrelated to the Southern District of Illinois.  *See Hotel Constructors, Inc. v. Seagrave Corp.*, 543 F. Supp. 1048, 1050 (N.D. Ill. 1982) ("[P]laintiffs' choice of forum

has reduced value where the forum lacks any significant contact with the underlying cause of action.").  Notably, the transferee districts will be more convenient to witnesses, including the implanting and treating physicians, because many of these witnesses are located in the transferee districts.  The Court does not find Plaintiffs' suggestion that Defendant present the physicians' testimony by way of deposition persuasive.  While Defendant's employees will not find these districts convenient, they will be no more inconvenient than the Southern District of Illinois.  The Court also finds that the transferee districts are closer to the individual plaintiffs and will prove more convenient in that respect.  Finally, the citizens and courts in the Southern District of Illinois should not be burdened with matters wholly unrelated to the district.  *See Truex v. Johnson & Johnson*, 13-cv-988-JPG-SCW, 2013 WL 5546525, at *2 (S.D. Ill. Oct. 8, 2013).  Rather, the transferee districts have a stronger interest in addressing the safety of medical device implantations and procedures occurring in their districts.  *See id.*

Based on the representations that Plaintiffs were implanted with Cervicore and received subsequent treatment in their respective and/or adjoining districts, the Court finds it appropriate to transfer the Plaintiffs' claims to the respective districts in which Plaintiffs reside.  Plaintiff Carol McGrew's claim will remain in the Southern District of Illinois. The Court transfers the remaining cases as follows: (1) Phyllis Ann Good to the Eastern District of Michigan; (2) Thomas Day and Terri Lyn Day to the District of Colorado; (3) Colleen Jaeger and William Jaeger to the Northern District of California; (4) Rebecca Kaspers to the Western District of Washington; (5) Jackie Parks and Steven Parks to the Middle District of Florida; (6)  Stephen Pepke and Tara Pepke to the Eastern District of Michigan; (7) Donna Zaretzska to the District of South Carolina; and (8) Angela Moneymaker and Donald Moneymaker to the Eastern District of Virginia.

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Sever Plaintiffs and Transfer Venue (Doc. 13).  Plaintiff Carol McGrew's claim will proceed in the Southern District of Illinois.  The remaining Plaintiffs' claims are severed and will proceed as follows: (1) Phyllis Ann Good to the Eastern District of Michigan; (2) Thomas Day and Terri Lyn Day to the District of Colorado; (3) Colleen Jaeger and William Jaeger to the Northern District of California; (4) Rebecca Kaspers to the Western District of Washington; (5) Jackie Parks and Steven Parks to the Middle District of Florida; (6) Stephen Pepke and Tara Pepke to the Eastern District of Michigan; (7) Donna Zaretzska to the District of South Carolina; and (8) Angela Moneymaker and Donald Moneymaker to the Eastern District of Virginia.  The Court **DIRECTS** the Clerk of Court to sever Plaintiffs and transfer them to the appropriate districts.

**IT IS SO ORDERED.**

**DATED:** January 13, 2015

<u>s/ Staci M. Yandle</u>
**STACI M. YANDLE**
**DISTRICT JUDGE**

8